IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION

| | |
|---|---|
| MASTER LOCK COMPANY LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. |
| | ) |
| INTERNATIONAL UNION, UNITED | ) |
| AUTOMOBILE, AEROSPACE AND | ) |
| AGRICULTURAL IMPLEMENT WORKERS OF | ) |
| AMERICA, INTERNATIONAL UNION, UNITED | ) |
| AUTOMOBILE, AEROSPACE AND | ) |
| AGRICULTURAL IMPLEMENT WORKERS OF | ) |
| AMERICA LOCAL 469, and JACQUELINE | ) |
| PETERSON, JACK SKOK, and LAWRENCE | ) |
| JOZWIAK, individually and on behalf of others | ) |
| similarly situated, | ) |
| | ) |
| Defendants. | ) |

## CLASS ACTION COMPLAINT FOR DECLARATORY JUDGMENT

Through this Complaint, plaintiff Master Lock Company LLC ("Master Lock" or the "Company") seeks a declaratory judgment concerning its rights and obligations under collective bargaining agreements ("CBAs") negotiated between Master Lock and the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America ("UAW" or "Union") and Local 469 of the UAW ("Local 469"). Defendants are: (1) the UAW, (2) Local 469 and (3) Jacqueline Peterson, Jack Skok, and Lawrence Jozwiak, as individuals and on behalf of other former Master Lock employees who were represented by the UAW and Local 469 at the time of their retirement from Master Lock, and who upon retirement received or were eligible to receive certain benefits under the CBAs in effect through and including March 31, 2013 between

Master Lock and Local 469 and under the Master Lock Company Consolidated Health and Welfare Plan (the "Retirees" or the "Defendant Class"). Master Lock alleges as follows:

## INTRODUCTION

1. This is an action by Master Lock for a declaratory judgment seeking to resolve a present and actual controversy arising from Master Lock's pending elimination of: (a) the monthly contribution toward the cost of Medicare Part B Master Lock currently provides to Medicare-eligible Retirees, and (b) life insurance coverage for the Retirees (collectively referred to herein as "medical and life insurance benefits").

2. The UAW's business representative and a number of Retirees have questioned the legality of Master Lock's announced changes to the Retirees' medical and life insurance benefits.

3. Master Lock brings this action to confirm its rights under the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 141 *et seq.*, and the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. § 1001 *et seq.*, to reduce or terminate the medical and life insurance benefits currently provided to the Retirees under a now-expired CBA entered into between Master Lock and Local 469 in 2008 and under the Master Lock Company Consolidated Health and Welfare Plan (the "Plan").

4. Master Lock seeks a declaration that the Retirees are not entitled to vested, lifetime medical or life insurance benefits paid for by Master Lock. Master Lock further seeks a declaration that it has the legal right to modify, amend, or terminate the medical and life insurance benefits currently provided to the Retirees.

## JURISDICTION AND VENUE

5. This is an action seeking a declaratory judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, to determine the respective rights and obligations of the parties under the CBAs between Master Lock and Local 469 and the Plan. This Court has

subject matter jurisdiction under section 301 of the LMRA, 29 U.S.C. § 185, sections 502(a)(1)(B), (a)(3), (e)(1), or (f) of ERISA, 29 U.S.C. §§ 1132(a)(1)(B), (a)(3), (e)(1), or (f), or applicable federal common law.

6. Additionally, because each count of the Complaint raises federal questions, this Court has jurisdiction under 28 U.S.C. § 1331. This Court has jurisdiction over Count I under section 301 of the LMRA, 29 U.S.C. § 185, and over Count II under sections 502(e)(1) and (f) of ERISA, 29 U.S.C. §§ 1132(e)(1) and (f).

7. Venue is proper in this district under section 301 of the LMRA, 29 U.S.C. § 185, and section 502(e)(2) of ERISA, 29 U.S.C. § 1132(e)(2), because the CBAs between Master Lock and Local 469 were negotiated in this district, the Plan is administered in this district, the parties to the CBAs are located in and reside in this district, and the actions at issue in this Complaint are expected to take place in this district. Venue is also proper in this district under 28 U.S.C. § 1391 because a substantial part of the events giving rise to the claims at issue herein occurred in this district.

**PARTIES**

8. Plaintiff Master Lock is a Delaware limited liability company with its corporate headquarters and principal place of business in Oak Creek, Wisconsin. Master Lock is a leading manufacturer of padlocks and security products. At all relevant times, Master Lock has been an "employer" and "plan sponsor" of the Master Lock Company Consolidated Health and Welfare Plan (or its predecessor plans) within the meaning of sections 3(5) and 3(16)(B)(i) of ERISA, 29 U.S.C. §§ 1002(5) and 1002(16)(B)(i). The Plan provides for medical and life insurance benefits for certain groups of retirees who were formerly employed by Master Lock. The Plan is an "employee welfare benefit plan" under section 3(1) of ERISA, 29 U.S.C. § 1002(1).

9. Upon information and belief, defendant UAW is a voluntary labor organization, as defined in section 2(5) of the National Labor Relations Act, 29 U.S.C. § 152(5), that is headquartered in Detroit, Michigan and maintains offices and locals throughout Wisconsin, including in Oak Creek, Wisconsin where defendant Local 469 is located, and has numerous members that reside in this district. At all times relevant to this Complaint, defendants UAW and Local 469 were the exclusive collective bargaining representative for hourly Union employees working at Master Lock and negotiated CBAs with Master Lock relating to, among other things, medical and life insurance benefits for Union employees. As a signatory to the CBAs, Local 469 has a strong interest in enforcing the terms of the CBAs with Master Lock.

10. Upon information and belief, named defendant and class representative Jacqueline Peterson is an adult resident of New Berlin, Wisconsin. Between 1969 and 2008, Peterson worked as an hourly employee at Master Lock, where she was a member of the bargaining unit represented by the UAW and Local 469, and served as a Trustee of Local 469. Peterson retired from Master Lock on June 20, 2008, and upon retirement was eligible to receive medical and life insurance benefits from Master Lock. Peterson is a "participant" in the Plan, as defined in section 3(7) of ERISA, 29 U.S.C. § 1002(7). Upon information and belief, Peterson claims to be entitled to vested, lifetime medical and life insurance benefits paid for by Master Lock.

11. Upon information and belief, named defendant and class representative Jack Skok is an adult resident of Muskego, Wisconsin. Between 1965 and 2009, Skok worked as an hourly employee at Master Lock, where he was a member of the bargaining unit represented by the UAW and Local 469. Skok retired from Master Lock on March 31, 2009, and upon retirement was eligible to receive medical and life insurance benefits from Master Lock. Skok is a "participant" in the Plan, as defined in section 3(7) of ERISA, 29 U.S.C. § 1002(7). Upon

information and belief, Skok claims to be entitled to vested, lifetime medical and life insurance benefits paid for by Master Lock.

12. Upon information and belief, named defendant and class representative Lawrence Jozwiak is an adult resident of Milwaukee, Wisconsin. Between 1978 and 2006, Jozwiak worked as an hourly employee at Master Lock, where he was a member of the bargaining unit represented by the UAW and Local 469, and served as a Trustee of Local 469. Jozwiak retired from Master Lock on January 31, 2006, and upon retirement was eligible to receive medical and life insurance benefits from Master Lock. Jozwiak is a "participant" in the Plan, as defined in section 3(7) of ERISA, 29 U.S.C. § 1002(7). Upon information and belief, Jozwiak claims to be entitled to vested, lifetime medical and life insurance benefits paid for by Master Lock.

13. This Court has personal jurisdiction over defendants pursuant to section 301(c) of the LMRA, 29 U.S.C. § 185(c), and section 502(e) of ERISA, 29 U.S.C. § 1132(e).

## FACTUAL ALLEGATIONS

**1965 - 2008 CBAs**

14. From 1965 to the present, Master Lock and Local 469 entered into a series of CBAs governing the terms and conditions of employment for hourly Union employees at Master Lock.

15. From 1976 - 2008, the CBAs entered into between Master Lock and Local 469 also included terms governing Master Lock's provision of medical and/or life insurance benefits for the duration of each agreement to eligible former hourly Union employees who retired from Master Lock. Accordingly, each CBA in this period provided medical and/or life insurance benefits for Retirees who retired under that CBA, as well as for Retirees who retired under prior CBAs.

16. For instance, section 10.01(b) of the June 2, 1976 CBA between Master Lock and Local 469 stated that "a $1,000 death benefit will be provided for each employee retiring under the provisions of the pension plan." The 1976 CBA did not include any terms governing the provision of medical benefits to the Retirees.

17. Upon expiration of the 1976 CBA, Master Lock and Local 469 agreed to a new CBA that increased the amount of life insurance benefits provided to the Retirees. Section 10.01(b) of the August 23, 1980 CBA between Master Lock and Local 469 stated that "a $2,000 death benefit will be provided for each employee retiring under the provisions of the pension plan."

18. Upon expiration of the 1980 CBA, Master Lock and Local 469 agreed to a new CBA that did not change the amount of life insurance benefits provided to the Retirees. Section 10.01(b) of the June 6, 1983 CBA between Master Lock and Local 469 stated that "a $2,000 death benefit will be provided for each employee retiring under the provisions of the pension plan."

19. Upon expiration of the 1983 CBA, Master Lock and Local 469 agreed to a new CBA that included an increase in the amount of life insurance benefits provided to the Retirees. Section 10.01(b) of the June 1, 1986 CBA between Master Lock and Local 469 stated that "a $4,000 death benefit will be provided for each employee retiring under the provisions of the pension plan." Beginning with the 1986 CBA, Master Lock and Local 469 also agreed that Master Lock would provide certain medical benefits to the Retirees. Section 10.01(d) of the 1986 CBA stated that Master Lock would "pay part B of Medicare for all retirees at a rate of $15.50 per month for the life of this contract."

20. Upon expiration of the 1986 CBA, Master Lock and Local 469 agreed to a new CBA that included increases in the amount of medical and life insurance benefits provided to the Retirees. Section 10.01(i) of the May 29, 1989 CBA between Master Lock and Local 469 stated that "[p]rior to January 1, 1990, the current $4,000 death benefit will be provided to each employee retiring under the provisions of the pension plan. This death benefit will increase to $8,000 for all retirees, present and future, effective January 1, 1990." Section 10.02(b) of the 1989 CBA stated that Master Lock would "pay part B of Medicare for all retirees at a rate of $15.50 per month. Effective January 1, 1990, the rate will be increased to $31.90 per month."

21. Upon expiration of the 1989 CBA, Master Lock and Local 469 agreed to a new CBA that included an increase in the amount of medical benefits provided to the Retirees. Master Lock and Local 469 agreed not to change the amount of life insurance benefits provided to the Retirees. Section 10.01(i) of the May 31, 1992 CBA between Master Lock and Local 469 stated that "for the life of this contract, a death benefit of $8,000 will be provided to each employee retiring under the provisions of the pension plan." Section 10.02(b) of the 1992 CBA stated that Master Lock would "pay part B of Medicare for all retirees at a rate of $36.60 per month for 1993; $41.10 per month for 1994, and $46.10 per month for 1995. These payments will be added to the retirees [*sic*] monthly pension checks and paid by Master Lock Company."

22. Upon expiration of the 1992 CBA, Master Lock and Local 469 agreed to a new CBA that included another increase in the amount of medical benefits provided to the Retirees. Master Lock and Local 469 agreed not to change the amount of life insurance benefits provided to the Retirees. Section 10.03 of the May 29, 1995 CBA between Master Lock and Local 469 stated that "[f]or the life of this contract, a death benefit of $8,000 will be provided to each retiree upon his death." Section 10.02(b) of the 1995 CBA stated that "[r]etirees who are

- 7 -
Case 2:14-cv-00383-LA   Filed 04/03/14   Page 7 of 16   Document 1

enrolled in Medicare Part B will continue to receive $46.10 per month through the remainder of 1995. Effective January 1, 1996, they will receive an increased monthly amount equal to the lower of the Medicare Part B premium or $51.60; effective January 1, 1997, the lower of the Medicare Part B premium or $57.80; and effective January 1, 1998, the lower of the Medicare Part B premium or $64.70."

23. Upon expiration of the 1996 CBA, Master Lock and Local 469 agreed to a new CBA that did not change the medical and life insurance benefits provided to the Retirees. Section 10.03 of the September 19, 1999 CBA between Master Lock and Local 469 stated that "[f]or the life of this Contract, a death benefit of $8,000 will be provided to each retiree upon his death." Section 10.02(b) of the 1999 CBA provided that "[r]etirees who are enrolled in Medicare Part B will, for the term of the 1999-2004 Agreement, receive the lower of (a) the Medicare Part B premium or (b) $64.70."

24. Upon expiration of the 1999 CBA, Master Lock and Local 469 agreed to a new CBA that did not change the medical and life insurance benefits provided to the Retirees. Section 10.03 of the June 1, 2003 CBA between Master Lock and Local 469 stated that "[f]or the life of this Contract, a death benefit of $8,000 will be provided to each retiree upon his death." Section 10.02(b) of the 2003 CBA provided that "[r]etirees who are enrolled in Medicare Part B will, for the term of the 1999-2008 Agreement, receive the lower of (a) the Medicare Part B premium or (b) $64.70."

25. Upon expiration of the 2003 CBA, Master Lock and Local 469 agreed to a new CBA that included increases in the amount of medical and life insurance benefits provided to the Retirees. Section 12.03 of the January 28, 2008 CBA between Master Lock and Local 469 stated that "[f]or the life of this Contract, a death benefit of $10,000 will be provided to each retiree

upon his death." Section 12.02(b) of the 2008 CBA provided that "[r]etirees who are enrolled in Medicare Part B will, for the term of the 2008-2013 Agreement, receive the lower of (a) the Medicare Part B premium or (b) $75.00 (January 1, 2008); $100.00 (January 1, 2009); $120.00 (January 1, 2010)." Master Lock and Local 469 also agreed that new hires would not be eligible for retiree medical insurance. Section 12.02 of the 2008 CBA provided that "[e]mployees hired after January 28th, 2008 will no longer by [*sic*] eligible for retiree medical insurance."

**Master Lock's 2013 Notice of Upcoming Changes to Retiree Benefits**

26. On March 30, 2013, prior to the March 31, 2013 expiration of the 2008 CBA, Master Lock sent a letter to the Retirees notifying them that in light of the "many changes now confronting the Company as part of the Affordable Care Act, the time has come to revisit [retiree] benefit offerings." The letter further stated that:

> During the Company's ongoing negotiations with UAW Local 469 to replace the [2008 CBA], the Company has proposed a number of changes in those benefits for future retirees. After studying the issue, it has become clear that the Company must also consider changing or terminating the benefits provided to already-retired employees. This is to advise you that, pursuant to the language in the benefit plan documents allowing the Company to modify or terminate coverage, the Company expects to make future changes in certain insurance benefits provided to former employees who have already retired … The affected benefits may include life insurance … and the Medicare Part B supplement … In the meantime, until you receive further notice, the Company is voluntarily continuing these benefits without change at this time.

27. Master Lock provided a copy of the March 30, 2013 letter to a UAW business representative.

**The 2013 CBA**

28. On May 29, 2013, after the expiration of the 2008 CBA, Master Lock and Local 469 entered into a new CBA.

29. Master Lock and Local 469 agreed not to include any terms governing the provision of medical or life insurance benefits to the Retirees in the 2013 CBA. Instead, the

2013 CBA addressed only the Medicare Part B supplement and life insurance benefits for active Master Lock employees, stating in Appendix Q that "[a]s part of the negotiation of the 2013-2018 agreement, the parties have agreed that employees previously eligible for retiree life insurance and Medicare Part B supplements shall receive the following payments:

| Age as of 3/31/2013 | Cut Off Payment |
|---|---|
| 20's | $2,000 |
| 30's | $3,000 |
| 40's | $4,000 |
| 50's | $6,000 |
| 60's | $7,000" |

30. Furthermore, section 12.02 of the 2013 CBA provided that "[e]mployees hired after January 28th, 2008 are not eligible for retiree medical insurance."

**Master Lock's 2014 Announced Changes to Retiree Benefits**

31. By letter dated January 15, 2014, Master Lock notified the Retirees and a UAW business representative of its intention to make certain changes to the Retirees' medical and life insurance benefits. The letter acknowledged that the landscape of healthcare has changed dramatically as a result of certain rules under the Affordable Care Act taking effect. Noting that the Company had already made significant adjustments to active employee health benefits, the letter stated that Master Lock had decided that it was also necessary to make the following changes to the medical and life insurance benefits currently provided to the Retirees:

- Effective August 31, 2014, retiree life insurance benefits provided under the Plan will be terminated; and

- Effective August 31, 2014, the monthly Medicare Part B supplement will be terminated.

32. The January 15, 2014 letter stated that any questions regarding the Company's announced changes to the Retirees' medical and life insurance benefits should be left on the Master Lock Benefits Department's voicemail box.

33. To date, Master Lock has received numerous messages from Retirees challenging Master Lock's decision to terminate their medical and life insurance benefits. Moreover, a UAW bargaining representative informed Master Lock that the UAW has referred Master Lock's decision regarding the Retirees' medical and life insurance benefits to the UAW's legal department.

## CLASS ACTION ALLEGATIONS

34. The Defendant Class is composed of former Master Lock employees who were represented by the UAW and Local 469 at the time of their retirement from Master Lock, and who upon retirement received or were eligible to receive medical and life insurance benefits under the CBAs in effect through and including March 31, 2013 between Master Lock and Local 469 and under the Plan.

35. Joinder of the approximately 473 individual members of the Defendant Class is not practicable.

36. The right of Master Lock to terminate the Retirees' medical and life insurance benefits currently provided under the now-expired CBA entered into between Master Lock and Local 469 in 2008 and/or the Plan is a question of law common to all members of the putative Defendant Class.

37. The claims and defenses of the Class Representatives are typical of the Defendant Class's claims and defenses. On information and belief, the Class Representatives all assert, *inter alia*, that Master Lock is obligated under the CBAs between Master Lock and Local 469

- 11 -
Case 2:14-cv-00383-LA   Filed 04/03/14   Page 11 of 16   Document 1

and the Plan to provide medical and life insurance benefits that cannot be unilaterally altered or terminated during the Retirees' lifetimes.

38. As retirees who will be affected by Master Lock's pending elimination of the medical and life insurance benefits currently provided under the now-expired 2008 CBA and the Plan, the Class Representatives have an interest in defending against the claims and will represent the interests of the other Defendant Class members adequately. Upon information and belief, there is no conflict between the Class Representatives and other members of the Defendant Class with respect to this action.

39. Members of the Defendant Class reside in different areas across the United States. As a result, Master Lock could be exposed to a multiplicity of lawsuits in many states concerning common questions of law. Consequently, these questions are best decided in a single court proceeding.

40. This action is properly maintained as a class action under Federal Rule of Civil Procedure 23(b)(1). The litigation of the parties' claims in separate individual actions may result in varied interpretations of the CBAs entered into between Master Lock and Local 469 and the Plan, thereby subjecting Master Lock to incompatible standards of conduct. Additionally, the adjudication of class members' claims on an individual basis may, as a practical matter, impair the ability of other individual class members to protect their interests.

41. Alternatively, this action is properly maintained as a class action under Federal Rule of Civil Procedure 23(b)(2). By announcing uniform changes to all Retirees' medical and life insurance benefits, Master Lock has acted on grounds generally applicable to the Defendant Class. A declaratory judgment regarding Master Lock's right to terminate the Retirees' medical

and life insurance benefits currently provided under the now-expired 2008 CBA and the Plan is appropriate with respect to the Defendant Class a whole.

## COUNT I

**Declaratory Judgment Under the Labor Management Relations Act that Master Lock Is Entitled Under the CBAs To Terminate the Retirees' Medical and Life Insurance Benefits**

42. Master Lock re-alleges and incorporates by reference Paragraphs 1 through 41 as though fully set out herein.

43. An actual controversy exists between the parties concerning Master Lock's right to modify, amend, or terminate the collectively bargained medical and life insurance benefits currently provided to the Retirees.

44. Master Lock contends that pursuant to the unambiguous language of the CBAs between Master Lock and Local 469, particularly the 2008 CBA, the Retirees are not entitled to lifetime or vested medical and life insurance benefits, and Master Lock has the right to modify, amend, or terminate these collectively bargained benefits in accordance with the terms of the contracts.

45. Master Lock is aware, however, that many of the Retirees maintain a differing interpretation as to the nature and duration of Master Lock's obligation to provide medical and life insurance benefits to the Retirees. After Master Lock announced the changes to the Retirees' medical and life insurance benefits on January 15, 2014, a number of the Retirees contacted Master Lock and questioned the legality of Master Lock's announced changes. Moreover, the UAW's bargaining representative informed Master Lock that the UAW has referred Master Lock's decision regarding the Retirees' medical and life insurance benefits to the UAW's legal department.

46. Accordingly, a judicial declaration is necessary and appropriate to determine Master Lock's right under the LMRA to modify, amend, or terminate the medical and life insurance benefits currently provided to the Retirees under the now-expired 2008 CBA between Master Lock and Local 469.

## COUNT II

**Declaratory Judgment Under the Employee Retirement Income Security Act of 1974 that Master Lock is Entitled Under the Plan To Terminate the Retirees' Medical and Life Insurance Benefits**

47. Master Lock re-alleges and incorporates by reference Paragraphs 1 through 46 as though fully set out herein.

48. Section 404(a)(1)(D) of ERISA requires that Master Lock comply with the terms of the Plan documents under which Master Lock provides the Retirees with medical and life insurance benefits to the extent those terms are consistent with ERISA's requirements. Section 201(1) of ERISA, 29 U.S.C. § 1051(1), exempts welfare benefits such as retiree health care and life insurance from the vesting requirements of ERISA, unless the employer agrees to allow vesting.

49. Master Lock at no time agreed that the medical and life insurance benefits provided to the Retirees under the Plan would be vested.

50. Master Lock, as the Plan's sponsor, fully complied with the Plan documents and ERISA in deciding to terminate the medical and life insurance benefits currently provided to the Retirees under the Plan.

51. As set forth previously, a number of the Retirees dispute Master Lock's legal right to terminate the medical and life insurance benefits currently provided to the Retirees under

the Plan, and the UAW has referred Master Lock's decision regarding the Retirees' medical and life insurance benefits to its legal department.

52. Accordingly, a judicial declaration is necessary and appropriate to determine Master Lock's right under ERISA to modify, amend, or terminate the medical and life insurance benefits currently provided to the Retirees under the Plan.

## REQUEST FOR RELIEF

WHEREFORE, Master Lock respectfully requests that this Court enter judgment:

(a) Declaring that the changes in the Retirees' medical and life insurance benefits announced by Master Lock on January 15, 2014 will not violate the LMRA or breach any CBAs between Master Lock and Local 469;

(b) Declaring that the changes in the Retirees' medical and life insurance benefits announced by Master Lock on January 15, 2014 will not violate ERISA or any of the terms of the Plan documents;

(c) Declaring that the changes in the Retirees' medical and life insurance benefits announced by Master Lock on January 15, 2014 will not violate any other federal, state, local or administrative law;

(d) Preliminarily and permanently enjoining the UAW, Local 469 and the Retirees from instituting any action in any other jurisdiction or venue against Master Lock, its designates, officers, directors, or agents with respect to the subject matter of this action, except by way of counterclaim herein;

(e) Awarding Master Lock attorneys' fees and costs incurred in this action in accordance with all applicable law, including but not limited to, ERISA § 502(g), 29 U.S.C. § 1132(g); and

(f) Granting such other and further relief as the Court may find appropriate.

Dated: April 3, 2014         Respectfully submitted,

                                                 **MASTER LOCK COMPANY LLC**

                                                 */s/ Nancy G. Ross*
                                                 One of its Attorneys

Nancy G. Ross
McDermott, Will & Emery LLP
227 West Monroe Street
Chicago, Illinois 60606-5096
T: (312) 372-2000
F: (312) 984-7700
E-mail: nross@mwe.com

Joshua D. Rogaczewski
McDermott, Will & Emery LLP
500 North Capitol Street, N.W.
Washington, DC 20001
T: (202) 756.8195
F: (202) 591.2757
E-mail: jrogaczewski@mwe.com

Judith A. Williams-Killackey
Bar No: 1029928
Quarles & Brady LLP
411 East Wisconsin Avenue
Suite 2350
Milwaukee, WI 53202-4426
T: (414) 277-5439
F: (414) 978-8702
E-mail: judi.williams@quarles.com

**ATTORNEYS FOR PLAINTIFF
MASTER LOCK COMPANY LLC**

DM_US 50772269-1.090055.0049