## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF WISCONSIN
## MILWAUKEE DIVISION

**MASTER LOCK COMPANY LLC,**

     Plaintiff,

          v.

**INTERNATIONAL UNION, UNITED AUTOMOBILE, AEROSPACE AND AGRICULTURAL IMPLEMENT WORKERS OF AMERICA,** and **INTERNATIONAL UNION, UNITED AUTOMOBILE, AEROSPACE AND AGRICULTURAL IMPLEMENT WORKERS OF AMERICA LOCAL 469,**

     Defendants-Counter-Plaintiffs,

         and

**JACQUELINE PETERSON, JACK SKOK,** and **LAWRENCE JOZWIAK,** individually and on behalf of others similarly situated,

     Defendants,

         and

**CLINTON CROSBY, CLYDE EHLERS, and DORIS MEISSNER**, individually and on behalf of others similarly situated,

     Counter-Plaintiffs.

Case No.

# 14-CV-00383-LA

---

## ANSWER AND CLASS ACTION COUNTERCLAIM
## FOR DECLARATORY JUDGMENT

---

## ANSWER

Defendants-counter-plaintiffs International Union, United Automobile, Aerospace and Agricultural Implement Workers of America ("UAW" or "Union"), International Union, United Automobile, Aerospace and Agricultural Implement Workers of America, Local 469 ("Local 469"), and defendants Jacqueline Peterson, Jack Skok and Lawrence Jozwiak, by its attorneys, Hawks Quindel, S.C., by Richard Saks and Jeffrey P. Sweetland, as an answer to plaintiff Master Lock Company, LLC's ("Master Lock") Class Action Complaint for Declaratory Judgment admit, deny and allege as follows:

1.  Answering paragraph 1, admit the allegations.

2.  Answering paragraph 2, admit the allegations.

3.  Paragraph 3 is a statement of legal assertions and argument to which no answer is required, but to the extent that an answer is deemed necessary, defendants deny the allegations in said Paragraph 3.

4.  Paragraph 4 is a statement of legal assertions and argument to which no answer is required, but to the extent that an answer is deemed necessary, defendants deny the allegations in said Paragraph 4.

5.  Paragraph 5 is an assertion of law to which no answer is required, but to the extent that an answer is deemed necessary, defendants admit that this Court has subject matter jurisdiction as alleged.

6. Paragraph 6 is an assertion of law to which no answer is required, but to the extent that an answer is deemed necessary, defendants admit that this Court has federal question jurisdiction as alleged.

7. Paragraph 7 is an assertion of law to which no answer is required, but to the extent that an answer is deemed necessary, defendants admit that venue is proper in this district as alleged.

8. Answering paragraph 8, admit the allegations, but further note that Master Lock is a wholly owned subsidiary and operating unit of Fortune Brands Home and Security, Inc. headquartered in Deerfield, Illinois.

9. Answering paragraph 9, admit the allegations.

10. Answering paragraph 10, admit the allegations.

11. Answering paragraph 11, admit the allegations.

12. Answering paragraph 12, admit the allegations, but deny that Mr. Jozwiak's retirement date was January 31, 2006, and allege that it was January 30, 2006.

13. Answering paragraph 13, admit the allegations.

14. Answering paragraph 14, admit the allegations.

15. Answering paragraph 15, deny that medical and/or life insurance benefits were "for the duration of each agreement," and admit the remaining allegations.

16. Answering paragraph 16, defendants admit that the first sentence correctly quotes a portion of § 10.01(b) of the 1976 CBA; deny that the quoted language constitutes the entire sum and substance of said § 10.01(b); and admit the allegations in the second sentence of paragraph 16.

3

17. Answering paragraph 17, defendants admit the allegations in the first sentence; admit that the second sentence correctly quotes a portion of § 10.01(b) of the 1980 CBA; and deny that the quoted language constitutes the entire sum and substance of said § 10.01(b).

18. Answering paragraph 18, defendants admit the allegations in the first sentence; admit that the second sentence correctly quotes a portion of § 10.01(b) of the 1983 CBA; and deny that the quoted language constitutes the sum and substance of said § 10.01(b).

19. Answering paragraph 19, defendants admit the allegations in the first sentence; admit that the second sentence correctly quotes a portion of § 10.01(b) of the 1986 CBA; deny that the quoted language constitutes the entirety of said § 10.01(b); admit the allegations in the third sentence; admit that the fourth sentence correctly quotes a portion of § 10.01(d) of the 1986 CBA; and deny that the quoted language constitutes the entire sum and substance of said § 10.01(d).

20. Answering paragraph 20, defendants admit the allegations in the first sentence; admit that the second sentence correctly quotes a portion of § 10.01(i) of the 1989 CBA; deny that the quoted language constitutes the entire sum and substance of said § 10.01(i); and admit that the fourth sentence correctly quotes a portion of § 10.02(b) of the 1986 CBA.

21. Answering paragraph 21, admit the allegations.

22. Answering paragraph 22, admit the allegations.

4

23. Answering paragraph 23, defendants admit that the 1999 CBA did not change the medical and life insurance benefits provided to the Retirees; deny the remaining allegations in the first sentence of paragraph 23; admit that the second sentence correctly quotes a portion of § 10.03 of the 1999 CBA; and admit that the third sentence correctly quotes a portion of § 10.02)(b) of the 1999 CBA.

24. Answering paragraph 24, admit the allegations.

25. Answering paragraph 25, admit the allegations.

26. Answering paragraph 26, admit that Master Lock sent a letter to retirees dated March 30, 2013, and admit that paragraph 26 correctly quotes certain portions of said letter, but deny that the quoted language constitutes the entire sum and substance of said letter.

27. Answering paragraph 27, admit the allegations.

28.  Answering paragraph 28, admit that Master Lock and Local 469 entered into a new CBA on May 29, 2013, and deny the remaining allegations.

29. Answering paragraph 29, admit that the 2013 CBA did not carry over §§ 12.02(b) and 12.03 from the 2008 CBA; admit that paragraph 29 correctly quotes a portion of Appendix Q to the 2013 CBA; and deny the remaining allegations.

30. Answering paragraph 30, admit the allegations.

31. Answering paragraph 31, admit that Master Lock sent a letter dated January 15, 2014 to retirees and a UAW business representative; admit that said letter threatened the actions described in the bullet points in paragraph 31; and state that otherwise said letter speaks for itself and on that basis deny the remaining allegations in paragraph 31..

5

32. Answering paragraph 32, admit the allegations.

33. Answering paragraph 33, defendants have insufficient information to either admit or deny the allegations of the first sentence and put the plaintiff to its strict proof thereon; admit the allegations in the second sentence.

34. Paragraph 34 is a statement of legal assertions and argument to which no answer is required, but to the extent that an answer is deemed necessary, defendants deny the allegations in said Paragraph 34.

35. Paragraph 35 is a statement of legal assertions and argument to which no answer is required, but to the extent that an answer is deemed necessary, defendants deny the allegations in said Paragraph 35.

36. Paragraph 36 is a statement of legal assertions and argument to which no answer is required, but to the extent that an answer is deemed necessary, defendants deny the allegations in said Paragraph 36.

37. Answering paragraph 37, the first sentence is a statement of legal assertions and argument to which no answer is required, but to the extent that an answer is deemed necessary, the defendants admit that the claims and defenses of defendants Peterson, Skok and Jozwiak are typical of the claims and defenses of some retirees and deny that they are typical of those of other retirees; defendants admit the allegations in the second sentence.

38. Paragraph 38 is a statement of legal assertions and argument to which no answer is required, but to the extent that an answer is required, defendants admit the allegations.

Case 2:14-cv-00383-LA   Filed 04/29/14   Page 6 of 33   Document 22

39. Paragraph 39 is a statement of legal assertions and argument to which no answer is required, but to the extent that an answer is required, defendants admit the allegations.

40. Paragraph 40 is a statement of legal assertions and argument to which no answer is required, but to the extent that an answer is required, defendants admit the allegations.

41. Paragraph 41 is a statement of legal assertions and argument to which no answer is required, but to the extent that an answer is required, defendants admit the allegations.

42. Defendants re-assert and incorporate by reference their answers to paragraphs 1 through 41 of the complaint as though fully set out herein.

43. Paragraph 43 is a statement of legal assertions and argument to which no answer is required, but to the extent that an answer is required, defendants admit the allegations.

44. Paragraph 44 is a statement of legal assertions and argument to which no answer is required, but to the extent that an answer is required, defendants admit that paragraph 44 describes plaintiff's contentions and denies the remaining allegations.

45. Answering paragraph 45, defendants admit the allegations in the first sentence; have insufficient information to either admit or deny the allegations of the second sentence and put the plaintiff to its strict proof thereon; and admit the allegations in the third sentence.

46. Paragraph 46 is a statement of legal assertions and argument to which no answer is required, but to the extent that an answer is required, defendants admit that a judicial declaration is necessary and appropriate to determine the parties' respective rights under the LMRA and deny the remaining allegations.

47. Defendants re-assert and incorporate by reference their answers to paragraphs 1 through 46 of the complaint as though fully set out herein.

48. Paragraph 48 is a statement of legal assertions and argument to which no answer is required.

49. Answering paragraph 49, deny the allegations.

50. Answering paragraph 50, deny the allegations.

51. Answering paragraph 51, admit the allegations.

52. Paragraph 52 is a statement of legal assertions and argument to which no answer is required, but to the extent that an answer is required, defendants admit that a judicial declaration is necessary and appropriate to determine the parties' respective rights under the LMRA and deny the remaining allegations.

**AFFIRMATIVE DEFENSES**

53. Failure to state a claim on which relief may be granted.

54. Failure to join necessary and indispensable parties.

55. Per the principles of equitable estoppel, all former Master Lock retirees who retired under, and in reasonable reliance upon, the CBAs negotiated between plaintiff and defendant Local 469, and then-existing welfare benefit plans, are entitled to the

8

receipt of their post-retirement death benefits and Medicare Part B premiums after age 65.

## REQUEST FOR RELIEF

WHEREFORE, the defendants respectfully request that this Court enter judgment:

(a) Dismissing Master Lock's complaint and granting judgment to the defendants;

(b) Awarding the defendants their attorney fees and costs incurred in this action in accordance with applicable law;

(c) Granting such other and further relief as the Court may find appropriate.

## CLASS ACTION COUNTERCLAIM FOR DECLARATORY RELIEF

### INTRODUCTION

The counter-plaintiffs are the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America ("UAW"); its Local 469 ("Local 469) (collectively sometimes the "Union"), which represents production and maintenance employees of Master Lock Company, LLC ("Master Lock" or the "Company") at its Milwaukee, Wisconsin facilities; Clinton Crosby, individually and on behalf of other former Master Lock employees who were represented by the Union and retired between June 2, 1976 and May 29, 1995 and were promised a post-retirement death benefit, and some also promised Company reimbursement of Medicare Part B premiums after age 65; Clyde Ehlers, individually and on behalf of other former Master Lock employees who were represented by the Union and retired in approximately 1993

9

pursuant to a "Special Voluntary Separation Program for Hourly Employee" offered from October 15, 1993 to November 15, 1993" (the "1993 Special Retirement Program"); and Doris Meissner, individually and on behalf of other former Master Lock employees who were represented by the Union and retired in approximately 1997 pursuant to a "Voluntary Early Retirement Program for Hourly Paid Union Employees" offered from September 3, 1997 to October 20, 1997 (the "1997 Special Retirement Program"). Among the benefits promised under the 1993 and 1997 Special Retirement Programs were promised an $8,000 retirement death benefit and reimbursement of Medicare Part B premiums after age 65. However, by letter dated January 15, 2014, Master Lock notified all of its retired Union-represented employees, including but not limited to Mr. Crosby, Mr. Ehlers, Ms. Meissner, and the others who retired prior to May 29, 1995, and those who retired pursuant to the 1993 and 1997 Special Retirement Programs, that, effective August 31, 2014, it would terminate both their monthly Medicare Part B supplement and their life insurance, including the retirement death benefit. Because the Union and the retirees believe the retirees acquired vested, lifetime rights to these benefits under the 1993 and 1997 Special Retirement Programs, they bring this class action counterclaim for a declaration of those rights.

## JURISDICTION AND VENUE

1. This counterclaim seeks a declaratory judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.*, to determine the respective rights and obligations of the parties under (a) collective bargaining agreements (CBAs) between the Company in the Union in effect between June 2, 1976 and May 29, 1995, and (b) the

10

1993 and 1997 Special Retirement Programs. This Court has subject matter jurisdiction under section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, section 502(a)(1)(B), (a)(3), (e)(1) or (f) of the Employee Retirement Income Security Act, as amended ("ERISA"), 29 U.S.C. § 1132(a)(1)(B), (a)(3), (e)(1) or (f), or applicable federal common law.

2. Additionally, because each count of the counterclaim raises federal questions, this Court has jurisdiction under 28 U.S.C. § 1331. This Court has jurisdiction over Counts I, II, and IV under section 301 of the LMRA, 29 U.S.C. § 185, and over Count III under section 502(e)(1) and (f) of ERISA, 29 U.S.C. § 1132(e)(1) and (f).

3. Venue over the counterclaim is proper in this district under section 301 of the LMRA, 29 U.S.C. § 185 and section 502(e)(2) of ERISA, 29 U.S.C. § 1132(e)(2), because the CBAs between Master Lock and Local 469 and the 1993 and 1997 Special Retirement Programs were negotiated by Master Lock and Local 469 in this district, the CBAs and the Special Retirement Programs have been administered in this district, the parties to the CBAs and the Special Retirement Programs are located in and reside in this district, and the actions at issue in this counterclaim are expected to take place in this district. Venue is also proper in this district under 28 U.S.C. § 1391 because a substantial part of the events giving rise to this counterclaim occurred in this district.

## PARTIES

4. Counter-plaintiff UAW is a labor organization, as defined in section 2(5) of the National Labor Relations Act (NLRA), 29 U.S.C. § 152(5), having its headquarters in Detroit, Michigan. UAW maintains offices and locals throughout Wisconsin, including

11

in West Allis, Wisconsin, where counter-plaintiff Local 469 is located, and has numerous members who reside in this district. At all times relevant to this counterclaim, counter-plaintiffs UAW and Local 469 were the exclusive collective bargaining representatives for hourly Union employees working at Master Lock's Milwaukee, Wisconsin facilities, including those who retired under the CBAs in effect between June 2, 1976 and May 29, 1995, and the 1993 and 1997 Special Retirement Plans.

5. Counter-plaintiff Local 469 is a labor organization, as defined in section 2(5) of the NLRA, 29 U.S.C. § 152(5), and a local of UAW, having its headquarters in Oak Creek, Wisconsin. At all times relevant to this counterclaim, counter-plaintiffs UAW and Local 469 were the exclusive collective bargaining representatives for hourly Union employees working at Master Lock's Milwaukee, Wisconsin facilities, including those who retired under the CBAs in effect between June 2, 1976 and May 29, 1995 and the 1993 and 1997 Special Retirement Plans.

6. Counter-plaintiff and named class representative Clinton Crosby is an adult resident of Milwaukee, Wisconsin. Mr. Crosby was born on September 7, 1923. Between 1971 and 1988, Mr. Crosby worked as an hourly employee at Master Lock, where he was a member of the bargaining unit represented by the Union. Mr. Crosby retired from Master Lock on January 1, 1988 pursuant to the CBA in effect between June 1, 1986 and May 28, 1989 (the "1986 CBA"), pursuant to the terms of which he was eligible for a Medicare Part B supplement upon reaching age 65 and a post-retirement death benefit. Mr. Crosby claims to have a vested, lifetime interest in said Medicare Part B supplement and death benefit.

7. Counter-plaintiff and named class representative Clyde Ehlers is an adult resident of Mequon, Wisconsin. Mr. Ehlers was born on September 3, 1932. Between 1950 and 1993, Mr. Ehlers worked as an hourly production employee at Master Lock, where he was a member of the bargaining unit represented by the Union. Mr. Ehlers retired from Master Lock on November 30, 1993 in reliance upon and pursuant to the 1993 Special Retirement Program, pursuant to the terms of which he was eligible for a Medicare Part B supplement upon reaching age 65 and a death benefit of $8,000. Mr. Ehlers is a "participant" in the 1993 Special Retirement Program, as defined in section 3(7) of ERISA, 29 U.S.C. § 1002(7). Mr. Ehlers claims to have a vested, lifetime interest in said Medicare Part B supplement and death benefit.

8. Counter-plaintiff and named class representative Doris Meissner is an adult resident of Milwaukee, Wisconsin. Ms. Meissner was born on July 20, 1940. Between 1962 and 1997, Ms. Meissner worked as an hourly production employee at Master Lock, where she was a member of the bargaining unit represented by the Union. Ms. Meissner retired from Master Lock on March 17, 1997 pursuant to the 1997 Special Retirement Program, pursuant to the terms of which she was eligible for a Medicare Part B supplement upon reaching age 65 and a death benefit of $8,000. Ms. Meissner is a "participant" in the 1997 Special Retirement Program, as defined in section 3(7) of ERISA, 29 U.S.C. § 1002(7). Ms. Meissner claims to have a vested, lifetime interest in said Medicare Part B supplement and death benefit.

9. Counter-defendant Master Lock is a Delaware limited liability company having its headquarters in Oak Creek, Wisconsin. Master Lock is the employer of

13

hourly employees in the bargaining unit represented by the Union, which included counter-plaintiffs Clyde Ehlers and Doris Meissner prior to their respective retirements, for purposes of the NLRA. Master Lock is also the "employer" and "plan sponsor" of the 1993 and 1997 Special Retirement Programs, as defined in sections 3(5) and 3(16)(B)(i) of ERISA, 29 U.S.C. §§ 1002(5) and 1002(16)(B)(i).

10. This Court has personal jurisdiction over counter-defendant Master Lock pursuant to section 301(c) of the LMRA, 29 U.S.C. § 185(c) and section 502(e) of ERISA, 29 U.S.C. § 1132(e).

## FACTS

**The 1976 through 1986 CBAs**

11. From 1965 to the present, Master Lock and Local 469 have been parties to a series of CBAs governing the terms and conditions of employment for hourly Union employees at Master Lock's Milwaukee facility.

12. Article X, entitled Pension Plan, at § 10.01 of the CBA in effect from June 2, 1976 through August 22, 1980 (the "1976 CBA") provided, in relevant part:

> The Pension Plan now in effect, which includes an age 62 normal retirement age, . . . and full vesting after ten (10) years of service, shall be continued in effect during the life of this Agreement excepting as follows:
>
> . . . .
>
> > (a) Effective June 2, 1976, a $1,000 death benefit will be provided for each employee retiring under the provisions of the pension plan.

13. Article X, entitled Pension Plan, at § 10.01 of the CBA in effect from August 23, 1980 through June 5, 1983 (the "1980 CBA") provided, in relevant part:

The Pension Plan now in effect, which includes an age 62 normal retirement age, . . . and full vesting after ten (10) years of service, shall be continued in effect during the life of this Agreement excepting as follows:

. . . .

    (b) Effective August 23, 1980, a $2,000 death benefit will be provided for each employee retiring under the provisions of the pension plan.

14.  Article X, entitled Pension Plan, at § 10.01 of the CBA in effect from June 6, 1983 through May 31, 1986 (the "1983 CBA") provided, in relevant part:

The Pension Plan now in effect, which includes an age 62 normal retirement age, . . . and full vesting after ten (10) years of service, shall be continued in effect during the life of this Agreement excepting as follows:

. . . .

    (b) Effective August 23, 1980, a $2,000 death benefit will be provided for each employee retiring under the provisions of the pension plan.

15.  Article X, entitled Pension Plan, at § 10.01 of the CBA in effect from June 1, 1986 through May 28, 1989 (the "1986 CBA") provided, in relevant part:

The Pension Plan now in effect, which includes an age 62 normal retirement age, . . . and full vesting after ten (10) years of service, shall be continued in effect during the life of this Agreement excepting as follows:

. . . .

    (b) Effective June 1, 1986, a $4,000 death benefit will be provided for each employee retiring under the provisions of the pension plan.

. . . .

    (d) The Employer will pay part B of Medicare for all retirees at a rate of $15.50 per month for the life of this contract.

16.  Article X, entitled Pension Plan, of the CBA in effect from May 29, 1989 through May 30, 1992 (the "1989 CBA") provided, in relevant part:

10.01.  The Pension Plan now in effect, which includes an age 62 normal retirement age, shall be continued in effect during the life of this Agreement excepting as follows:

. . . .

    (d) Vesting after five (5) years of service.

. . . .

    (i)  Prior to January 1, 1990, the current $4,000 death benefit will be provided for each employee retiring under the provisions of the pension plan. This death benefit will increase to $8,000 for all retirees, present and future, effective January 1, 1990.

10.02.  Retirees Medical Coverage

. . . .

    (b) The employer will pay Part B of Medicare for all retirees at a rate of $15.50 per month. Effective January 1, 1990 the rate will be increased to $31.90 per month.

17. Article X, entitled Pension Plan, of the CBA in effect from May 31, 1992 until

May 29, 1995 (the "1992 CBA") provided in relevant part:

10.01. The Pension Plan now in effect, which includes an age 62 normal retirement age, shall be continued in effect during the life of this Agreement excepting as follows:

. . . .

    (d) Vesting after five (5) years of service.

. . . .

    (k) Effective May 31, 1992, and for the life of this contract, a death benefit of $8,000 will be provided to each employee retiring under the provisions of the pension plan.

10.02.  Retirees Medical Coverage

. . . .

    (b) Employer will pay Part B of Medicare for all retirees at a rate of $36.60 per month for 1993,; $41.10 per month for 1994,and $46.10 per month for 1995. These payments will be added to the retirees [sic] monthly pension checks and paid by Master Lock Company. .

**The 1993 Special Retirement Program**

16

18. In 1993, Master Lock and the Union were parties to a three-year collective bargaining agreement which took effect on May 31, 1992 (the "1992 CBA"). Section 10.02(b) of the 1992 CBA provided:

> Employer will pay part B of Medicare for all retirees at a rate of $36.60 per month for 1993; $41.10 per month for 1994, and $46.10 per month for 1995. These payments will be added to the retirees [*sic*] monthly pension checks and paid by Master Lock.

19. In October 1993, Master Lock and the Union negotiated the terms of the 1993 Special Retirement Program. Those terms were set forth in a document entitled "Master Lock Special Voluntary Separation Program for Hourly Employees – Offered October 15, 1993 to November 15, 1993," and included but were not limited to the following:

> Master Lock Company, Milwaukee Division, is offering a Special Voluntary Separation Program for Hourly Employees during the period from October 15 through November 15, 1993. This Special Voluntary Separation Program offers a one-time severance to employees who meet the following eligibility requirements:
>
> - are active employees as of September 1, 1993 (including those on a leave of absence), and
>
> - were born on or before December 31, 1934, and would have completed at least 15 years of service as of December 31, 1993.
>
> . . . .
>
> **It is our present intent that this Special Voluntary Separation Program is a one-time non-precedent setting program.**
>
> . . . .
>
> SEVERANCE AND OTHER PAYMENTS UNDER SPECIAL VOLUNTARY SEPARATION PROGRAM
>
> The Special Voluntary Separation Program offers the following incentives to eligible employees who elect to separate under this program:
>
> . . . .

17

**4)  Company-paid $8,000 retirement death benefit now (whether or not you actually take retirement at the time of separation).  There will be no additional $8,000 death benefit at retirement if retirement is delayed to a later date.)  Employees will also be entitled to convert (at their own expense) any life insurance coverage in effect at the time of separation, according to policy rules.**

PAYMENT UNDER THIS PROGRAM

. . . .

    In the event the employee dies following an election to participate in this program, the benefits payable hereunder will be paid to his or her spouse or if there is no spouse, then to the employee's estate.

THERE IS NO CHANGE IN MASTER LOCK COMPANY PENSION PLAN PROVISIONS

    This one-time Special Voluntary Separation Program is separate from the Company's pension plan.  The severance payments made under this Program are not contingent directly or indirectly, upon your retiring at this time.  However, you may elect to retire should you wish to do so.  If you have not attained age 62 at the time of separation, you may retire immediately but your pension benefits will be actuarially reduced pursuant to plan rules as shown in the accompanying pension benefit statement.  You will be entitled to your full (unreduced) pension benefit only if benefits commence at age 62 or thereafter.  According to the Pension Plan rules, when you reach age 65 your benefit will be increased to include the special age 65 benefit if you are enrolled in Medicare Part B.  Nothing under this policy affects the manner in which pension eligibility and/or benefits are calculated.

. . . .

STATUS OF OTHER BENEFITS IF YOU ELECT TO PARTICIPATE IN SPECIAL VOLUNTARY SEPARATION PROGRAM:

. . . .

LIFE INSURANCE COVERAGE

    Your employee life insurance will continue through the end of the month in which you cease employment.  As part of the Special Voluntary Separation Program, effective the first of the month following your separation, you will be covered for the $8,000 retirement death benefit referred to as item 4 under Severance And Other Payments.  (You will also be entitled to convert your

18

existing life insurance coverage to an individual policy, at your own expense, pursuant to policy rules.)

. . . .

OTHER IMPORTANT CONSIDERATIONS

This communication serves as the Plan Document and Summary Plan Description for the Special Voluntary Separation Program. Should there be any difference between the information in this document and any verbal communications from any source, this document shall control. Severance benefits are governed by the Employee Retirement Income Security Act. The Company is the Plan Administrator and is vested with the authority to administer and construe the terms of the Program only in accordance with the Agreement negotiated with the UAW. Please refer to the ERISA information set forth at the end of this document.

(All highlighting in original).

20. Counter-plaintiff Ehlers accepted the 1993 Special Retirement Program and retired thereunder on September 30, 1993. At the time of her retirement, she was 60 years old.

21. Counter-plaintiff Ehlers reached age 65 on November 12, 1997. Since then she has been covered by Medicare Part B and has received a Medicare Part B supplement as provided for in the 1993 Special Retirement Program.

**The 1997 Special Retirement Program**

22. In 1997, Master Lock and the Union were parties to a three-year collective bargaining agreement which took effect on May 29, 1995 (the "1995 CBA").

23. Section 10.02(b) of the 1995 CBA provided:

(b) Retirees who are enrolled in Medicare Part B will continue to receive $46.10 per month through the remainder of 1995.

Effective January 1, 1996, they will receive an increased monthly amount equal to the lower of the Medicare Part B premium or $51.60; effective January 1, 1997, the

19

lower of the Medicare Part B premium or $57.80; and effective January 1, 1998, the lower of the Medicare Part B premium or $64.70.

24.  On or about June 27, 1997, the Company and the Union, in contemplation of the elimination of up to 426 of 1,130 total bargaining unit positions due to outsourcing – up to 156 in Phase I, beginning on or about January 27, 1997, and up to 270 beginning May 24, 1998 – negotiated a "Supplemental Agreement," which extended the 1995 CBA to May 28, 2000 with certain modifications.

25.  Part IV of the Supplemental Agreement , entitled "Voluntary Early Retirement Program," provided for the 1997 Special Retirement Program and included but was not limited to the following:

1.  Eligibility

    a.  55 years of age with 15 years of service as of 12/31/97.

    b.  Must have been an active employee of the Company on January 27, 1997 (or has been on an approved leave of absence).  All employees who have retired since January 27, 1997, and are otherwise eligible for the early retirement benefit program, shall be entitled to participate in the program.

    c.  Other than employees who retired between January 27, 1997 and the date of the Agreement, the employee must remain in the employ of the Company until separated by the Company provided however, that an employee who elects this Program shall be separated no later than 60 days from the end of the election period except in the case of an employee who has a skill critical to the company's operation in which case the employee will be separated no later than 150 days after the end of the election period.

    d.  This benefit is available to all eligible employees to lessen the impact on the remaining workforce who could be affected as a result of Phase I or Phase II outsourcing, productivity improvements, relocation of work, or an economic downturn.

2.  Benefits

    . . . .

f. Life Insurance:

    1) Eligibility: Employees who retire under this Early Retirement program

    2) Duration: For the life of the retiree

    3) Benefit: $8,000 death benefit paid to the designated beneficiary upon the death of the retiree.

g. Medicare Part B

Benefit: The Company will provide the benefits set forth in Section 10.02(b) which provides the lower of: (a) the Medicare Part B premium or (b) $64.70 monthly commencing when the retiree reaches age 65.

26. The 1997 Special Retirement Program was offered to eligible bargaining unit employees during the period September 3, 1997 to October 20, 1997.

27. Counter-plaintiff Meissner accepted the 1997 Special Retirement Program and last worked on March 19, 1998 with a retirement date of April 1, 1998. At the time of her retirement, she was 56 years old.

28. Counter-plaintiff Meissner reached age 65 on July 20, 2005. Since then she has been covered by Medicare Part B and has received a Medicare Part B supplement as required under the 1997 Special Retirement Program.

**Master Lock's 2014 Announced Changes to Retiree Benefits**

29. By letter dated January 15, 2014, Master Lock notified all of its retired hourly employees, including those who had retired pursuant to the 1993 and 1997 Special Retirement Programs, of its intention to make certain changes to the benefits which it had previously promised to them. In particular, the letter stated:

- Effective August 31, 2014, retiree life insurance benefits provided under the Plan will be terminated; and

21

- Effective August 31, 2014, the monthly Medicare Part B supplement will be terminated.

30. Upon information and belief, the "retiree life insurance benefits" mentioned in the January 15, 2014 letter include a death benefit promised in the 1993 and 1997 Special Retirement Programs.

## CLASS ACTION ALLEGATIONS

**The 1976-1995 Class**

31. The 1976 to 1995 Class is composed of former Master Lock employees, including but not limited to counter-plaintiff Crosby, who were represented by the Union at the time of their retirement and retired pursuant to either the 1976 CBA, the 1980 CBA, the 1983 CBA, the 1986 CBA the 1989 CBA, or the 1992 CBA. Members of the 1976-1995 class did not retire under the terms of either the 1993 or 1997 Special Retirement Program. To date all members of the 1976-1995 Class have received the Medicare Part B supplement since turning age 65 and have remained eligible for the post-retirement death benefit.

32. There are currently approximately 92 members of the 1976-1992 Class. Joinder of all of them is not practicable.

33. The 1976-1995 Class members' claims of vested, lifetime entitlement to the benefits promised to them under the CBA under which each of them retired, including but not limited to the Medicare Part B supplement and the post-retirement death benefit, and Master Lock's contrary claim of right to terminate those benefits are questions of law common to all members of the 1976-1995 Class.

22

34.  The claims and defenses of counter-plaintiff Crosby, as representative of the 1976-1995 Class, are typical of the 1976-1995 Class's claims and defenses.  Mr. Crosby asserts that he has a vested, lifetime entitlement to the Medicare Part B supplement and the post-retirement death benefit, which Master Lock may not unilaterally alter or terminate during his lifetime.

35.  A s a retiree under the 1986 CBA who will be affected by Master Lock's threatened unilateral elimination of the Medicare Part B supplement and the death benefit  promised thereunder, Mr. Crosby has an interest in asserting the claims of the 1976-1995 Class and will represent the interests of the other 1976-1995 Class members adequately.  There is no conflict of interest between Mr. Crosby and the other members of the 1976-1995 Class with respect to this action.

36.  This action is properly maintained as a class action under Fed. R. Civ. P. 23(b)(1).  The litigation of the parties' claims and defenses in separate individual actions may result in varied interpretations of the 1976 through 1992 CBAs, thereby subjecting Master Lock to incompatible standards of conduct.  Additionally, the adjudication of class members' claims on an individual basis may, as a practical matter, impair the ability of other individual class members to protect their interests.

37.  Alternatively, this action is properly maintained as a class action under Fed. R. Civ. P. 23(b)(2).  By announcing uniform changes to all 1976-1995 Class members' Medicare Part B supplements and death benefits under the 1976 through 1992 CBAs, Master Lock has acted on grounds generally applicable to the 1976-1995 Class.  A declaratory judgment regarding the 1976-1995 Class members' vested, lifetime

23

entitlement to those benefits is appropriate with respect to the 1976-1995 Class as a whole.

**The 1993 Class**

38.   The 1993 Class is composed of former Master Lock employees, including but not limited to counter-plaintiff Ehlers, who were represented by the Union at the time of their retirement and retired pursuant to the 1993 Special Retirement Program.   To date, all members of the 1993 Class have received the Medicare Part B supplement since turning age 65 and have remained eligible for the promised death benefit.

39.   There are currently approximately 44 members of the 1993 Class.   Joinder of all of them is not practicable.

40.   The 1993 Class members' claims of vested, lifetime entitlement to the benefits promised to them under the 1993 Special Retirement Program, including but not limited to the Medicare Part B supplement and the $8,000 death benefit, and Master Lock's contrary claim of right to terminate those benefits are questions of law common to all members of the 1993 Class.

41.   The claims and defenses of counter-plaintiff Ehlers, as representative of the 1993 Class, are typical of the 1993 Class's claims and defenses.   Mr. Ehlers asserts that he has a vested, lifetime entitlement to the Medicare Part B supplement and the $8,000 death benefit, which Master Lock may not unilaterally alter or terminate during her lifetime.

42.   As a retiree under the 1993 Special Retirement Program who will be affected by Master Lock's threatened unilateral elimination of the Medicare Part B supplement

24

and the $8,000 death benefit promised thereunder, Mr. Ehlers has an interest in asserting the claims of the 1993 Class and will represent the interests of the other 1993 Class members adequately. There is no conflict of interest between Mr. Ehlers and the other members of the 1993 Class with respect to this action.

43. This action is properly maintained as a class action under Fed. R. Civ. P. 23(b)(1). The litigation of the parties' claims and defenses in separate individual actions may result in varied interpretations of the 1993 Special Retirement Program, thereby subjecting Master Lock to incompatible standards of conduct. Additionally, the adjudication of class members' claims on an individual basis may, as a practical matter, impair the ability of other individual class members to protect their interests.

44. Alternatively, this action is properly maintained as a class action under Fed. R. Civ. P. 23(b)(2). By announcing uniform changes to all 1993 Class members' Medicare Part B supplements and $8,000 death benefits under the 1993 Special Retirement Program, Master Lock has acted on grounds generally applicable to the 1993 Class. A declaratory judgment regarding the 1993 Class members' vested, lifetime entitlement to those benefits is appropriate with respect to the 1993 Class as a whole.

**The 1997 Class**

45. The 1997 Class is composed of former Master Lock employees, including but not limited to counter-plaintiff Meissner, who were represented by the Union at the time of their retirement and retired pursuant to the 1997 Special Retirement Program. To date, all members of the 1997 Class have received the Medicare Part B supplement since turning age 65 and have remained eligible for the $8,000 death benefit.

46.  There are currently approximately 38 members of the 1997 Class.  Joinder of all of them is not practicable.

47. The 1997 Class members' claims of vested, lifetime entitlement to the benefits promised to them under the 1997 Special Retirement Program, including but not limited to the Medicare Part B supplement and the $8,000 death benefit, and Master Lock's contrary claim of right to terminate those benefits are questions of law common to all members of the 1997 Class.

48.  The claims and defenses of counter-plaintiff Meissner, as representative of the 1997 Class, are typical of the 1997 Class's claims and defenses.  Ms. Meissner asserts that she has a vested, lifetime entitlement to the Medicare Part B supplement and the $8,000 death benefit, which Master Lock may not unilaterally alter or terminate during (his/her) lifetime.

49.  As a retiree under the 1997 Special Retirement Program who will be affected by Master Lock's threatened unilateral elimination of the Medicare Part B supplement and the $8,000 death benefit  promised thereunder, Ms. Meissner has an interest in asserting the claims of the 1997 Class and will represent the interests of the other 1997 Class members adequately.  There is no conflict of interest between Ms. Meissner and the other members of the 1997 Class with respect to this action.

50.  This action is properly maintained as a class action under Fed. R. Civ. P. 23(b)(1).  The litigation of the parties' claims and defenses in separate individual actions may result in varied interpretations of the 1997 Special Retirement Program, thereby subjecting Master Lock to incompatible standards of conduct.  Additionally, the

26

adjudication of class members' claims on an individual basis may, as a practical matter, impair the ability of other individual class members to protect their interests.

51.   Alternatively, this action is properly maintained as a class action under Fed. R. Civ. P. 23(b)(2).   By announcing uniform changes to all 1997 Class members' Medicare Part B supplements and $8,000 death benefits under the 1997 Special Retirement Program, Master Lock has acted on grounds generally applicable to the 1997 Class.   A declaratory judgment regarding the 1997 Class members' vested, lifetime entitlement to those benefits is appropriate with respect to the 1997 Class as a whole.

## COUNT I

**Declaratory Judgment under the Labor Management Relations Act that
Members of the 1976-95 Class Enjoy Vested, Lifetime Entitlements to Medicare
Part B Supplements and the $8,000 Death Benefit under the 1976-1992 CBAs.**

52.   The counter-plaintiffs re-allege and incorporate by reference paragraphs 1 through 51 of the counterclaim as though fully set forth herein.

53.   An actual controversy exists between the parties concerning the 1976-1995 Class members' claims of vested, lifetime entitlement to the benefits promised to them under the CBA under which each of them retired, including but not limited to the Medicare Part B supplement and the death benefit.

54.   The counter-plaintiffs contend that, pursuant to the terms of the CBA under which each of them retired, they enjoy a vested, lifetime entitlement to the benefits promised thereunder, including but not limited to the Medicare Part B supplement and the death benefit, which Master Lock may not unilaterally modify or terminate.

55.  In its letter of January 15, 2014, Master Lock has asserted a contrary right to terminate those benefits unilaterally, which it threatens to do effective August 1, 2014.

56.  Accordingly, a judicial declaration is necessary and appropriate to determine the parties' respective rights under the LMRA with respect to the benefits promised under the 1976 through 1992 CBAs.

## COUNT II

### Declaratory Judgment under the Labor Management Relations Act that the Members of the 1993 Class Enjoy Vested, Lifetime Entitlements to Medicare Part B Supplements and the $8,000 Death Benefit under the 1993 Special Retirement Program

57.  The counter-plaintiffs re-allege and incorporate by reference paragraphs 1 through 56 of the counterclaim as though fully set forth herein.

58.  An actual controversy exists between the parties concerning the 1993 Class members' claims of vested, lifetime entitlement to the benefits promised to them under the 1993 Special Retirement Program, including but not limited to the Medicare Part B supplement and the $8,000 death benefit.

59.  The counter-plaintiffs contend that, pursuant to the terms of the collectively-bargained 1993 Special Retirement Program, they enjoy a vested, lifetime entitlement to the benefits promised thereunder, including but not limited to the Medicare Part B supplement and the $8,000 death benefit, which Master Lock may not unilaterally modify or terminate.

60.  In its letter of January 15, 2014, Master Lock has asserted a contrary right to terminate those benefits unilaterally, which it threatens to do effective August 1, 2014.

28

61.  Accordingly, a judicial declaration is necessary and appropriate to determine the parties' respective rights under the LMRA with respect to the benefits promised under the 1993 Special Retirement Program.

## COUNT III

### Declaratory Judgment under the Employee Retirement Income Security Act that the Members of the 1993 Class Enjoy Vested, Lifetime Entitlements to Medicare Part B Supplements and the $8,000 Death Benefit under the 1993 Special Retirement Program

62.  The counter-plaintiffs re-allege and incorporate by reference paragraphs 1 through 61 of the counterclaim as though fully set forth herein.

63.  Section 404(a)(1)(D) of ERISA requires that Master Lock comply with the terms of plan documents under which it provides its retirees, including the members of the 1993 Class, with medical and death benefits to the extent those terms are consistent with ERISA's requirements.  Although section 201(1) of ERISA, 29 U.S.C. § 1051(1), exempts welfare benefits, including medical benefits and benefits in the event of death, from ERISA's explicit vesting requirements, such benefits are vested and enforceable as such if the employer has so agreed.

64.  By its terms, the document entitled "Master Lock Special Voluntary Separation Program for Hourly Employees – Offered October 15, 1993 to November 15, 1993" is the plan document governing the 1993 Special Retirement Program.

65.  The counter-plaintiffs submit that, in the 1993 Special Retirement Program, Master Lock agreed that the benefits provided therein, including but not limited to the

Case 2:14-cv-00383-LA   Filed 04/29/14   Page 29 of 33   Document 22

Medicare Part B supplement and the $8,000 death benefit, were vested and not subject to its unilateral modification or termination.

66.   The counter-plaintiffs further submit that, by its unilateral decision to terminate the 1993 Class members' Medicare Part B supplement and their $8,000 death benefit, Master Lock is acting in derogation of its obligations as plan sponsor of the 1993 Special Retirement Program under both the plan document and ERISA.

67. As set forth previously, Master Lock asserts to the contrary that the 1993 Class members' rights to the subject benefits under the 1993 Special Retirement Program are not vested and that it has the right to modify or terminate those benefits unilaterally.

68.   Accordingly, a judicial declaration is necessary and appropriate to determine the parties' respective rights under the ERISA with respect to the benefits promised under the 1993 Special Retirement Program.

## COUNT IV

### Declaratory Judgment under the Labor Management Relations Act that the Members of the 1997 Class Enjoy Vested, Lifetime Entitlements to Medicare Part B Supplements and the $8,000 Death Benefit under the 1997 Special Retirement Program

69.   The counter-plaintiffs re-allege and incorporate by reference paragraphs 1 through 68 of the counterclaim as though fully set forth herein.

70.   An actual controversy exists between the parties concerning the 1997 Class members' claims of vested, lifetime entitlement to the benefits promised to them under

the 1997 Special Retirement Program, including but not limited to the Medicare Part B supplement and the $8,000 death benefit.

71. The counter-plaintiffs contend that, pursuant to the terms of the collectively-bargained 1997 Special Retirement Program, they enjoy a vested, lifetime entitlement to the benefits promised thereunder, including but not limited to the Medicare Part B supplement and the $8,000 death benefit, which Master Lock may not unilaterally modify or terminate.

72. In its letter of January 15, 2014, Master Lock has asserted a contrary right to terminate those benefits unilaterally, which it threatens to do effective August 1, 2014.

73. Accordingly, a judicial declaration is necessary and appropriate to determine the parties' respective rights under the LMRA with respect to the benefits promised under the 1997 Special Retirement Program.

## REQUEST FOR RELIEF

WHEREFORE, the counter-plaintiffs respectfully request that this Court enter judgment:

(a) Declaring that counter-plaintiff Clinton Crosby and that members of the 1976-1995 Class enjoy vested, lifetime rights to the post-retirement death benefit and the Medicare Part B supplement, which Master Lock may not unilaterally modify or terminate, under the terms of the CBA under which each member of the 1976-1992 Class retired, for purposes of LMRA;

(b) Declaring that the elimination of the 1976-1995 Class members' Medicare Part B supplement and death benefit, as threatened in Master Lock's January 15, 2014 letter, will violate LMRA;

(c) Preliminarily and permanently enjoining Master Lock from unilaterally terminating the 1976-1995 Class members' Medicare Part B supplement and death benefit;

(d) Declaring that counter-plaintiff Clyde Ehlers and the members of the 1993 Class enjoy vested, lifetime rights to the Medicare Part B supplement and $8,000 death benefit, which Master Lock may not unilaterally modify or terminate, under the terms of the 1993 Special Retirement Program, for purposes of both LMRA and ERISA;

(e) Declaring that the elimination of the 1993 Class members' Medicare Part B supplement and $8,000 death benefit, as threatened in Master Lock's January 15, 2014 letter, will violate both LMRA and ERISA;

(f) Preliminarily and permanently enjoining Master Lock from unilaterally terminating the 1993 Class members' Medicare Part B supplement and $8,000 death benefit;

(g) Declaring that counter-plaintiff Doris Meissner and the members of the 1997 Class enjoy vested, lifetime rights to the Medicare Part B supplement and $8,000 death benefit, which Master Lock may not unilaterally modify or terminate, under the terms of the 1997 Special Retirement Program, for purposes of LMRA;

(h) Declaring that the elimination of the 1997 Class members' Medicare Part B supplement and $8,000 death benefit, as threatened in Master Lock's January 15, 2014 letter, will violate LMRA;

(i) Preliminarily and permanently enjoining Master Lock from unilaterally terminating the 1993 Class members' Medicare Part B supplement and $8,000 death benefit;

(j) Awarding the counter-plaintiffs their attorney fees and costs incurred in this action in accordance with applicable law;

(k) Granting such other and further relief as the Court may find appropriate.

Dated at Milwaukee, Wisconsin on April 29, 2014.

/s/ Richard Saks
Richard Saks
Wis. Bar No. 1022048
Hawks Quindel, S.C.
P. O. Box 442
Milwaukee, WI 53201-0442
(414) 271-8650
(414) 271-8442 (fax)
rsaks@hq-law.com

Jeffrey P. Sweetland
Wis. Bar No. 1001737
Hawks Quindel, S.C.
P. O. Box 442
Milwaukee, WI 53201-0442
(414) 271-8650
(414) 271-8442 (fax)
jsweetland@hq-law.com

Niraj R. Ganatra
Deputy General Counsel
International Union, UAW
8000 East Jefferson Avenue
Detroit, Michigan 48214
(313) 926-5216
(313) 926-5240 (fax)
nganatra@uaw.net

Attorneys for the Defendants,
Defendant-Counter-Plaintiffs,
and Counter-Plaintiffs

33